UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SAMUEL M. LEVINE,

                   Plaintiff,

          v.

RICHARD S. LAWRENCE, and
COURT OFFICER JANOSEK,

                  Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
03-CV-1694 (DRH) (ETB)

A P P E A R A N C E S

**SAMUEL M. LEVINE, Esq.**
Plaintiff Pro Se
711 Shore Road, Apt. 2-E
Long Beach, New York 11561

**OFFICE OF THE ATTORNEY GENERAL OF NEW YORK**
Attorneys for Defendants
300 Motor Parkway, Suite 205
Hauppauge, New York 11788
By: John M. Shields, Esq.

**HURLEY, District Judge:**

*INTRODUCTION*

      Following his arrest and conviction for criminal contempt of court, Plaintiff

Samuel M. Levine brought the present civil action against New York State Family Court Judge

Richard S. Lawrence, and Court Officer Janosek.[1]  Levine seeks monetary damages, as well as

a declaratory judgment that New York's criminal contempt laws are unconstitutional.  The

---

[1]      Not otherwise identified in the parties' papers.

Defendants have moved to dismiss Levine's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Defendants' motion is GRANTED IN PART, as to Levine's claims against Judge Lawrence and for a declaratory judgment, but DENIED IN PART as to Levine's claims against Janosek.

## BACKGROUND

According to the complaint and the documents attached thereto, Levine served as attorney for one Leila Ayers in connection with the litigation of certain family law matters. On July 24, 2002, Levine appeared at Nassau County Family Court to argue several motions on Ayers's behalf. Levine states that he "was allowed about 40 minutes to make several motions to Judge Lawrence," but that "[f]ollowing Plaintiff Levine's motions and the commencement of testimony," Lawrence directed that Levine and Ayers be removed from the courtroom, without "mak[ing] findings or recit[ing] for the record any of the factors required to be considered under [the Uniform Rules for the Family Court, 22 NYCRR §] 205.4.[2]

---

[2] Section 205.4 states in relevant part:

Access to Family Court proceedings.
(a) The Family Court is open to the public. Members of the public, including the news media, shall have access to all courtrooms, lobbies, public waiting areas and other common areas of Family Court otherwise open to individuals having business before the court.
(b) The general public or any person may be excluded from a courtroom only if the judge presiding in the courtroom determines, on a case-by-case basis based upon supporting evidence, that such exclusion is warranted in that case. In exercising this inherent and statutory discretion, the judge may consider, among other factors, whether: (1) the person is causing or is likely to cause a disruption in the proceedings; (2) the presence of the person is objected to by one of the parties, including the law guardian, for a compelling reason; (3) the orderly and sound administration of justice, including the nature of the proceeding, the privacy interests of individuals before the court,

The following day, when Levine and Ayers returned for the scheduled continuation of the hearing, Janosek stopped them from entering the courtroom, and they were forced to wait in the hallway until Ayers was summoned to testify. According to Levine, he attempted to walk into the courtroom with Ayers, but was stopped by Janosek, who pushed Levine out of the courtroom doorway and back into the hallway, and then closed the courtroom door. Levine then "knocked on the courtroom door to gain entrance," and "stated he wanted to go in to protect the rights of Leila Ayers." At that point, according to Levine, "Janosek came out of the courtroom, assaulted Plaintiff Levine by grabbing his arms and putting handcuffs around his wrists." Two other Court Officers took Levine's briefcase and files, and he was then "pushed through the hallway into the main lobby of the court[house] in plain view of the court officers and members of the public." Levine was taken to the courthouse basement, read his Miranda rights, and "in all respects treated as a criminal."

According to Levine, he was subsequently brought back to the courtroom, still in handcuffs. He informed Lawrence that he had called an attorney. Lawrence refused Levine's request to the delay the proceedings, and "made certain statements into the court record which were an incomplete, inaccurate account of what transpired," and then "stated for the record that

_____

and the need for protection of the litigants, in particular, children, from harm, requires that some or all observers be excluded from the courtroom; (4) less restrictive alternatives to exclusion are unavailable or inappropriate to the circumstances of the particular case.

Whenever the judge exercises discretion to exclude any person or the general public from a proceeding or part of a proceeding in Family Court, the judge shall make findings prior to ordering exclusion.

he was proceeding with 'Contempt' action against Plaintiff Levine and imposing a sentence of 'time served' " for the thirty minutes in which Levine was handcuffed and in Janosek's custody. Finally, Lawrence ordered Levine's handcuffs removed, and ordered Janosek to "see to it that Plaintiff Levine was removed from the courtroom and court building."

Levine filed the present lawsuit pursuant to Section 1983 on April 8, 2003. He seeks a declaratory judgment that the Defendants violated his civil rights and that the New York statutory scheme governing summary contempt of court, pursuant to which Levine was arrested and convicted, is unconstitutional. Levine also seeks $4 million in compensation from Lawrence and Janosek for "damages to his person, his reputation and standing in the community and status as an attorney and former judge." The Defendants have moved to dismiss the entire complaint, arguing, *inter alia*, that the present suit is barred by the doctrine of absolute judicial immunity or alternatively, qualified official immunity.

*DISCUSSION*

I.      *Dismissal: Legal Standards*

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The court must accept the factual allegations contained in the complaint as true, and view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor.

4

*Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *cert. denied*, 513 U.S. 816 (1994).

Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief in support of his claim. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003). The issue is not how likely the plaintiff is to ultimately prevail, but whether he is entitled to even offer evidence to support his claims. "Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). These standards apply with particular strictness where, as here, the complaint alleges civil rights violations. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted).

Courts also must normally construe pro se complaints liberally, *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 140 (2d Cir. 2000), but practicing attorneys (like Levine) who choose to represent themselves cannot claim the special considerations normally afforded to pro se litigants. *Harbulak v. Suffolk County*, 654 F.2d 194, 198 (2d Cir. 1981). And a litigant's pro se status does not exempt him from compliance with the relevant rules of procedural and substantive law. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

II.     *Levine's Claim for a Declaratory Judgment Is Without Merit.*

Levine seeks a declaration that Article 19 of the New York Judiciary Law ("particularly Sections 750, 751, 752, 753, 754, and 755"), which governs the imposition of penalties for criminal contempt of court, is unconstitutional.[3] This claim is utterly without merit and must be dismissed.

According to Levine, the statutory scheme "fail[s] to establish the necessary requirements to comply with the due process and equal protection provisions of the Fifth and

---

[3] Judiciary Law § 750 allows a court to punish for criminal contempt a person guilty, inter alia, of (1) "[d]isorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority"; and (2) "[b]reach of the peace, noise, or other disturbance, directly tending to interrupt its proceedings."

Section 751, Part 1 of the Judiciary Law states in relevant part that punishment for an act of contempt under Section 750 "may be by fine, . . . or by imprisonment, not exceeding thirty days, in the jail of the county where the court is sitting, or both, in the discretion of the court." This penalty may be imposed summarily, when the act of contempt is "committed in the immediate view and presence of the court."

Section 752 of the Judiciary Law states in full:

Where a person is committed for contempt, as prescribed in section seven hundred fifty-one, the particular circumstances of his offense must be set forth in the mandate of commitment. Such mandate, punishing a person summarily for a contempt committed in the immediate view and presence of the court, is reviewable by a proceeding under article seventy-eight of the civil practice law and rules.

Similarly, Section 755 of the Judiciary Law states in full:

Where the offense is committed in the immediate view and presence of the court, or of the judge or referee, upon a trial or hearing, it may be punished summarily. For that purpose, an order must be made by the court, judge, or referee, stating the facts which constitute the offense and which bring the case within the provisions of this section, and plainly and specifically prescribing the punishment to be inflicted therefor. Such order is reviewable by a proceeding under article seventy-eight of the civil practice law and rules.

Fourteenth Amendments," including "[p]roper notice, a right to know and receive written charges, a right to a due process hearing with confrontation of witnesses, standards to establish the proof necessary to sustain civil or criminal contempt charges, [and] standards and guidelines for determining punishment and sentence."  In particular, Levine argues that the " 'summary contempt' action authorized in Judiciary Law Article 19, allowing judges . . . to act as witness, trial judge, prosecutor, jury and sentencing judge and without a hearing, or charges, . . . for actions committed or statements made in the judge's presence, deprives an attorney of his due process and equal protection rights."  According to Levine, "[t]he extraordinary, improper, wrongful, willful, unjudicial conduct by Defendant Lawrence, is sufficient evidence to justify striking down that Contempt Article, the Sections set forth above, and its statutory scheme."

To the extent that Levine is arguing that summary contempt proceedings inherently offend due process by  allowing a judge to act as "witness, trial judge, prosecutor, jury and sentencing judge," such arguments have long been rejected by federal and state courts, in particular the United States Supreme Court and the New York Court of Appeals. "From the very beginning of this Nation and throughout its history the power to convict for criminal contempt has been deemed an essential and inherent aspect of the very existence of our courts." *Morry Levine v. U.S.*, 362 U.S. 610, 615 (1960).  Generally speaking, all "contempts committed in the face of a court" may be "instantly punished without proof or examination." *U.S. v. Lumumba*, 741 F.2d 12, 16 (2d Cir. 1984).  As the Eleventh Circuit has noted, "summary adjudication and sentencing of contempts occupies a unique niche in our criminal

justice system. Only in this kind of proceeding do the otherwise inconsistent *functions of prosecutor, jury, and judge mesh into a single individual*." *Sandstrom v. Butterworth*, 738 F.2d 1200, 1209 (11th Cir. 1984) (emphasis added).

These exceptional rules are allowed in part because "[t]here is no need of evidence or assistance of counsel before punishment, because the court has seen the offense." *In re Katz*, 269 N.E.2d 816, 818 (N.Y. 1971) (quoting *Cooke v. U.S.*, 267 U.S. 517, 534 (1925)). But more importantly, "[i]t is the need for the preservation of the immediate order in the courtroom which justifies the summary procedure — one so summary that the right and need for an evidentiary hearing, counsel, opportunity for adjournment, reference to another Judge, and the like, are not allowable because it would be entirely frustrative of the maintenance of order." *Id.* Nor is this rationale limited to the federal courts. The Supreme Court has long made clear that "[t]he power to punish for contempt is inherent in all courts," and "such is the recognized doctrine in reference to the powers of the courts of the several states." *Ex Parte Terry*, 128 U.S. 289, 303 (1888) (internal quotations omitted).

The Supreme Court has repeatedly explained that this power, although admittedly " 'arbitrary in its nature and liable to abuse,' " is " 'absolutely essential to the protection of the courts in the discharge of their functions,' " and thus necessary for the "functioning of an independent judiciary, which is the ultimate reliance of citizens in safeguarding rights guaranteed by the Constitution." *Morry Levine*, 362 U.S. at 615-16 (quoting *Ex Parte Terry*, 128 U.S. at 313). Thus, "due process rights [are] sacrificed for order in the court and the dignified maintenance of its processes," *U.S. v. Lumumba*, 741 F.2d 12, 16 (2d Cir. 1984),

and Levine's arguments to the contrary are completely baseless.

Nor does it matter that Levine's allegedly contemptuous behavior occurred in the context of an attempt to zealously protect his client's rights and interests. "While a lawyer has a right and duty to argue vigorously . . . on behalf of his client, he must obey a direct order of the court, such as an order to cease argument, no matter how arbitrary he may believe it to be." *U.S. v. Lumumba*, 794 F.2d 806, 810 (2d Cir. 1986). So long as "the directive is clear and counsel understands it, he must obey even if he feels his obedience may risk prejudicing his client's substantive case." *Id.* Where a "ruling is adverse, it is not counsel's right to resist it or to insult the judge — his right is only to respectfully preserve his point for appeal." *Sacher v. U.S.*, 343 U.S. 1, 9 (1952). Where an attorney openly defies direct court rulings or directives, there is no doubt that he may be summarily held in contempt. *See Lumumba*, 794 F.2d at 809. "Any other result would surely create chaos in the courtroom." *Id.* at 810.

That is not to say that summary contempt proceedings may always be conducted without regard to the traditional tenets of due process. In fact, "due process requires that a lawyer cited for criminal contempt for conduct occurring during trial must — before being finally adjudicated in contempt at the end of trial — have notice and an opportunity to be heard." *U.S. v. Lumumba*, 741 F.2d 12, 13, 16-17 (2d Cir. 1984) (citing *Mayberry v. Pa.*, 400 U.S. 455, 463-64 (1971)). The New York Court of Appeals has explained that "the power of the hearing or trial court to maintain order by immediate summary action, if immediate summary action is required, remains unimpaired," but where the court "delay[s] the imposition of sanctions until after the hearing or trial, it may be inferred that there is no immediacy."

9

*Matter of Katz v. Murtagh*, 269 N.E.2d 816, 818 (N.Y. 1971). In such cases, contrary to Levine's assertions, New York law imposes "certain procedural requirements upon a court before someone may be held in summary criminal contempt. These include warnings or admonishments, the opportunity to desist, and the opportunity to make a statement in their defense or in extenuation of their conduct." *See O'Connell v. Taddeo*, 662 N.Y.S.2d 722, 725 (Sup. Ct. 1997) (citations omitted). "Indeed, the failure to adhere to these procedural requirements has served as a basis, in part, at least, for a determination of discipline against a judge."[4] *Id.* at 726.

In sum, Levine's constitutional challenge to New York's contempt law overlooks a long history of cases explicitly affirming a summary contempt exception to the traditional requirements of due process, and also overstates the applicability of this exception to cases such as his, where the contemptuous act is temporally separate from the proceedings to punish it. His due process arguments are accordingly doubly mistaken.

As a final matter, although Levine's complaint mentions that New York's summary contempt scheme also offends constitutional equal protection rights, neither his complaint nor his memorandum in opposition to the Defendants' dismissal motion offers any

---

[4]     In the present case, it appears that by holding Levine in contempt only after conclusion of the proceedings and not at the moment of Levine's actual contemptuous behavior, Judge Lawrence may have failed to abide by the requirements of constitutional due process and New York law. However, as suggested by the discussion in Part III, *infra*, Judge Lawrence is absolutely immune for his actions, and Levine's remedies, if any, are not in this Court.

explanation of how or why, and none is apparent.[5]  As the failure to adequately brief an

argument constitutes waiver of that argument, Levine's equal protection claim is deemed

waived, and will not be considered here.  *See*, *e.g.*, *Raniola v. Bratton*, 243 F.3d 610, 613 n.1

(2d Cir. 2001).


III.     *Judge Lawrence's Absolute Judicial Immunity Mandates Dismissal of All Claims*
         *Against Him.*

              The Defendants argue that Levine's claims against Judge Lawrence are barred

by the doctrine of absolute judicial immunity.  Levine argues in response that the Judge's acts

"were tortious acts, carried out wrongfully, maliciously and intentionally," and that Lawrence's

status as a judge does not give him "a license to commit tortious acts on an attorney or litigant

in court."  Levine is mistaken:  his claims against Judge Lawrence *are* barred by absolute

immunity.

              "It is well settled that judges are absolutely immune from suit for any actions

taken within the scope of their judicial responsibilities," even if on occasion such immunity

may result in unfairness and injustice to a litigant.  *Brady v. Marks*, 7 F. Supp.2d 247, 251

(W.D.N.Y. 1998) (citing *Mireles v. Waco*, 502 U.S. 9 (1991)).[6]  Under the common law,

---

[5]         As noted in Part I, *supra*, because Levine is an attorney, his submissions are held to the
higher standards demanded of attorneys appearing before this Court, and not to the relatively lax
standards that govern pro se submissions.

[6]         The Supreme Court has recognized that "a judge is not absolutely immune from criminal
liability," *Mireles v. Waco*, 502 U.S. 9, 10 n.1 (1991) (citing *Ex parte Virginia*, 100 U.S. 339,
348-349 (1880)), or "from a suit for prospective injunctive relief," *id.* (citing *Pulliam v. Allen*, 466
U.S. 522, 536-543 (1984)), or "from a suit for attorney's fees authorized by statute." *Id.* (citing
*Pulliam*, 466 U.S. at 543-544).  None of the above exceptions to judicial immunity is applicable to the

judges are generally immune from all tort actions, *see Dacey v. New York County Lawyers'*
*Ass'n*, 423 F.2d 188, 197 (2d Cir. 1969), and the United States Supreme Court has expressly
applied the doctrine of judicial immunity to actions brought pursuant to Section 1983. *See*
*Pierson v. Ray*, 386 U.S. 547, 554-55 (1967). "[I]t is not for the protection or benefit of a
malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges
should be at liberty to exercise their functions with independence and without fear of
consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (internal quotation and citations
omitted).

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment
of damages," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and is accordingly *not*
"overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be
resolved without engaging in discovery and eventual trial." *Mireles*, 502 U.S. at 11 (citing
*Pierson*, 386 U.S. at 554). A judge will also not be deprived of immunity based on an
incorrect decision, or an action in excess of his authority. *Fields v. Soloff*, 920 F.2d 1114,
1119 (2d Cir. 1990). "That the proceeding may have allegedly been conducted in an irregular
or erroneous manner does not abrogate the immunity." *Cogswell v. Rodriguez*, 304 F.
Supp.2d 350, 356 (E.D.N.Y. 2004) (citing *Stump v. Sparkman*, 435 U.S. 349, 363 n.12
(1978)). Nor will absolute immunity be overcome by allegations that a judge's decision was
"biased and prejudicial." *See Warburton v. Goord*, 14 F. Supp.2d 289, 296 (W.D.N.Y. 1998).

---

present case.

Even "the commission of grave procedural errors" by a judge does not abrogate his absolute immunity from liability. *Stump*, 435 U.S. at 359. Thus, to avoid dismissal, Levine must allege more than the mere tortiousness, wrongfulness, maliciousness, or intentionality of the Defendants' actions.

The Supreme Court has held that absolute judicial immunity is generally overcome in only two sets of circumstances: "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11 (citing *Forrester v. White*, 484 U.S. 219, 227-229 (1988)); and *Stump*, 435 U.S. at 360. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id*. at 12 (citing *Stump*, 435 U.S. at 356-357; and *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). Since the present case implicates neither of these exceptional circumstances, Judge Lawrence is entitled to absolute judicial immunity, and all claims against him must therefore be dismissed.

A. *Ejecting Levine from the courtroom and summarily holding him in contempt was a judicial action.*

Whether an act is "judicial" depends on "the nature of the act itself, i.e., whether it is a function normally performed by a judge," as well as on "the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. The Supreme Court has explained that a reviewing court should not scrutinize the "particular act in question" in a vacuum, but instead should "look to the particular act's relation to a general function normally performed by a judge." *Mireles*, 502 U.S. at 12-13 (while directing police

officers to "carry out a judicial order with excessive force" is not "a function normally performed by a judge," it is "relat[ed] to a general function normally performed by a judge," namely "directing police officers to bring counsel in a pending case before the court").[7]

A judge acts in his judicial capacity when he exercises control over his courtroom, and by extension, when he bars a litigant or attorney from the courtroom. *See Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) (citing *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966)). More specifically, "[t]he judicial power to punish through summary criminal contempt adjudication is a firmly established element in the operation of this country's courts," *Sandstrom v. Butterworth*, 738 F.2d 1200, 1208 (11th Cir. 1984), and is clearly related to a general function normally performed by a judge. *See, e.g.*, *Bardascini v. Reedy*, 381 N.Y.S.2d 151, 152 (App. Div. 1976) (since a judge has authority to punish contempts summarily, "any errors committed by him in furtherance of that power would be within the exercise of his judicial function").[8]

---

[7]     A judge's acts do not become non-judicial merely because they are erroneous or "in excess of his authority"; if that were the case, then "any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge." *Mireles*, 502 U.S. at 12.

[8]     Levine complains that Lawrence "acted as a witness, trial judge, prosecutor, jury, and sentencing judge." As discussed in Part II, *supra*, summary contempt proceedings have long bestowed this unique hybrid authority upon judges, in light of their "inherent power to preserve order and decorum in court proceedings." *In re Gustafson*, 650 F.2d 1017, 1024 (9th Cir. 1981). In federal courts for example, when "finding someone guilty of contempt and ordering that person jailed, fined or both, a court combines the roles of grand jury, prosecutor, and judge, almost with impunity. There is no notice, no right to be heard, no right to a jury — virtually no due process at all — for an attorney summarily held in contempt of court." *In re Holloway*, 995 F.2d 1080, 1097-98 (D.C. Cir. 1993). Thus, when he ordered Levine's removal from the courtroom, arrest, and confinement (assuming arguendo that he did so order), Judge Lawrence *was* still acting in a traditional judicial capacity.

Nor does the fact a judge's order is carried out by others somehow transform it "from 'judicial' to 'executive' in character." As the Supreme Court has explained, it is the nature of the function performed, not the identity of the actor who performed it, that determines whether absolute judicial immunity is applicable. *See Forrester v. White*, 484 U.S. 219, 229 (1988). Judge Lawrence's decision to hold Levine in criminal contempt of court was thus *not* a "nonjudicial action" that would be excepted from absolute judicial immunity.

B.     *Judge Lawrence did not act in the clear absence of jurisdiction.*

Although Levine's complaint states that "Defendant Lawrence was without jurisdiction . . . for the wrongful, wilful, and intentional acts perpetrated on Plaintiff Levine," the facts alleged in the same complaint indicate otherwise. As noted previously, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted). And more specifically, mere conclusory allegations that a judge acted without jurisdiction are insufficient to trump judicial immunity, particularly where the plaintiff's own allegations in fact demonstrate that the judge *did* have jurisdiction over the subject matter before him. *See Brady v. Marks*, 7 F. Supp.2d 247, 251-52 (W.D.N.Y. 1998).

The scope of a judge's jurisdiction "must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). The Second Circuit has assumed without deciding that judges in courts of limited jurisdiction are entitled, as are judges in courts of general jurisdiction, to judicial immunity for all judicial acts *not*

performed in the *clear absence of jurisdiction*. *Tucker v. Outwater* 118 F.3d 930, 937-38 (2d Cir. 1997) (noting that "the clear weight of authority" has applied absolute immunity to both types of judges). "Where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case" *Stump*, 435 U.S. at 356 n. 6 (citing *Bradley v. Fisher*, 80 U.S. 335, 351 (1872)). In the present case, there is no dispute that Judge Lawrence had jurisdiction over the underlying family law dispute, pursuant to which Levine appeared in his courtroom.

Even assuming that Judge Lawrence acted *in excess of his authority*, that does not mean that he acted *in the absence of all jurisdiction*, particularly when his actions are "taken in the very aid of the judge's jurisdiction over a matter before him" *Mireles v. Waco*, 502 U.S. 9, 13 (1991) (by authorizing police officers to use excessive force to bring attorney into his courtroom, judge acted in excess of his authority, but not outside his jurisdiction). Rather, a judge acts in the clear absence of all jurisdiction only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides. *See Stump*, 435 U.S. at 357 n.7 (citing *Bradley*, 80 U.S. at 352) (were probate judge to try criminal case, he would act in clear absence of jurisdiction and would not be immune from liability for his actions; but were criminal court judge to convict defendant of nonexistent crime, he would merely act in excess of his authority and would be immune from suit).

Just as judges act within their judicial roles when maintaining order and decorum in their courtrooms, they also act within their jurisdiction when doing so. *See Huminski v.*

*Corsones*, 386 F.3d 116, 140 (2d Cir. 2004). State judges generally have jurisdiction over contempt proceedings "even when they fail to comport with procedural niceties." *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 370 (9th Cir. 1981); *see also Williams v. Sepe*, 487 F.2d 913, 913-14 (5th Cir. 1973) (both cited in *Tucker v. Outwater*, 118 F.3d 930, 936 (2d Cir. 1997)). New York state judges in particular do not act in the clear absence of all jurisdiction when instituting criminal contempt proceedings pursuant to Judiciary Law § 750 against parties who disobey the judges' mandates. *See Abrahams v. DiBlasi*, No. 02 Civ. 8519, 2003 WL 1846305, at *2 (S.D.N.Y. Apr. 8, 2003)). In sum, Judge Lawrence clearly acted within his jurisdiction when he had Levine removed from his courtroom, and when he convicted him of contempt, and is thus absolutely judicially immune from Levine's suit.

IV.     *Dismissal of Levine's Claims Against Janosek Is Premature.*

      A.     *Janosek's entitlement to absolute immunity cannot be determined at the Rule 12(b)(6) stage.*

The Defendants argue that Judge Lawrence's absolute judicial immunity (discussed in Part III, *supra*) is "logically extended" to cover Janosek as well. But because certain critical facts are unclear from the face of Levine's complaint, dismissal of his claims against Janosek on the basis of absolute immunity is inappropriate at this juncture.

Absolute immunity is "of a rare and exceptional character," *Barrett v. U.S.*, 798 F.2d 565, 571 (2d Cir. 1986), and should only be applied "sparingly." *Burns v. Reed*, 500 U.S. 478, 487 (1991). In considering whether absolute immunity applies, federal courts employ a "functional approach," *id.* at 486, looking at "the nature of the function performed, not the

identity of the actor who performed it," *Forrester v. White*, 484 U.S. 219, 229 (1988), and whether there is historical or common-law support for cloaking the challenged actions with absolute immunity. *Burns*, 500 U.S. at 492-93. An official seeking absolute immunity bears the burden of showing that it is warranted for the function in question, against a presumption that qualified immunity affords sufficient protection. *Id.* at 486-87.

Because absolute judicial immunity is often "essential to safeguarding the integrity of the judicial process," it often "extends to those performing functions closely associated with that process." *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995). This "quasi-judicial" absolute immunity may at times protect various persons who are not judges from any and all lawsuits arising out of their actions, if (1) such persons are themselves "integral parts of the judicial process," *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983), or (2) their actions are taken pursuant to a direct judicial order. *See Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001) (citing cases from First, Fifth, and Ninth Circuits); *see also Respass v. New York City Police Dep't*, 852 F. Supp. 173, 177 (E.D.N.Y. 1994) (citing *Roland v. Phillips*, 19 F.3d 552 (11th Cir. 1994)). However, there appears to be no case in this Circuit discussing when arrests or uses of force by court officers restoring order in a courtroom or enforcing summary contempt orders fall within the scope of absolute quasi-judicial immunity, and the other authorities that have addressed this issue appear to be split.

Some courts have allowed court security personnel to enjoy absolute quasi-judicial immunity for their actions, where ordered by the trial judge and related to a judicial function. *See Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997). The Eighth

Circuit has noted that "judges frequently encounter disruptive individuals in their courtrooms," and that "exposing bailiffs and other court security officers to potential liability for acting on a judge's courtroom orders could breed a dangerous, even fatal, hesitation." *Id.* at 722. Accordingly, the Eighth Circuit has held that bailiffs and similar court officers generally cannot be sued for forcibly removing unruly or disruptive attorneys or litigants from a courtroom at the presiding judge's direction. *See id*. Such immunity may also cover court personnel who, at the direct order of a judge, temporarily confine a litigant. *See Fowler v. Alexander*, 478 F.2d 694, 695-96 (4th Cir. 1973), *and Hansen v. Wahl*, No. 89 Civ. 4054, 1990 WL 5730, at *1 (D. Kan. Jan. 16, 1990) (court officer absolutely immune from liability for enforcing judge's order to remove disruptive plaintiff from courtroom and incarcerate him for three days).

But "[b]ecause qualified immunity is presumed to be sufficient to protect public officials in the exercise of their discretionary duties," and "absolute immunity extends only so far as necessary to protect the judicial process," *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995), some courts have been reluctant to grant court officers absolute immunity for their actions taken in the course of physically subduing or removing disruptive individuals. *See Richman v. Sheahan*, 270 F.3d 430 (7th Cir. 2001); *Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989); *Dudley v. Johnson*, No. 95 Civ. 1755, 1995 WL 710916 (E.D. La. Nov. 30, 1995); *and Napier v. Jonas*, No. 94 Civ. 630, 1995 WL 454774 (W.D. Mich. Feb. 10, 1995).

While the outcomes of the various cases addressing this issue have thus varied,

most courts seem to agree that absolute quasi-judicial immunity should not extend to court officers enforcing judicial orders if either (1) the judge's order is facially invalid, *see Penn v. U.S.*, 335 F.3d 786, 789 (8th Cir. 2003), *and Roland v. Phillips*, 19 F.3d 552, 556-57 (11th Cir.1994); or (2) the judge's order is not facially invalid, but the court officer exceeds the scope of that order, *see Cruz v. Bodek*, No. 96 Civ. 6989, 1997 WL 55947, at *3 (S.D.N.Y. Feb. 10, 1997) (Koeltl, J.) (citing *Brown v. Costello*, 905 F. Supp. 65, 75 (N.D.N.Y. 1995), *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994), *and Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989)), or enforces it in an improper manner.  *See*, *e.g.*, *Martin v. Bd. of County Commrs. of County of Pueblo*, 909 F.2d 402, 405 (10th Cir. 1990).

In the latter regard, some courts have held that a bailiff is only entitled to quasi-judicial absolute immunity where his use of force to remove a person from the courtroom is within the scope of a direct judicial order.  *See Dudley v. Johnson*, No. 95 Civ. 1755, 1995 WL 710916, at *2 (E.D. La. Nov. 30, 1995) (bailiff who used physical force against litigant to restore order in courtroom is not entitled to absolute immunity if he was not acting pursuant to direct judicial order).  And the Seventh Circuit has indicated that the scope of such judicial orders must be interpreted rather narrowly, and that law enforcement officials are only entitled to absolute immunity for their actions where their actions were "*specifically ordered* by the judge."  *Richman v. Sheahan*, 270 F.3d 430, 436 (7th Cir. 2001) (emphasis added).  In *Richman v. Sheahan*, following a judge's order that a disruptive pro se litigant be "restrained," fourteen deputies "attacked" the litigant, "forced him to the floor," and "sat on and handcuffed him."  270 F.3d at 433-34.  The Seventh Circuit held that such conduct was not "specifically

20

directed" by the judge, and that the plaintiff was thus challenging the "manner in which [the deputies] enforced the judge's order," and not the judge's order itself. *Id.* at 437-38. Judge Sand similarly suggested this specificity standard for absolute quasi-judicial immunity in *Moss v. Williams*, No. 84 Civ. 3793, 1984 WL 1325, at *3 (S.D.N.Y. Dec. 11, 1984) (refusing to extend absolute immunity to court security officers who "do not claim that any actions they may have taken were at the specific direction of a judge").

Thus, where it is unclear from the record whether all of a court officer's challenged conduct, or the manner in which he acted was "done under the trial judge's authority and direction," the officer is not entitled to absolute quasi-judicial immunity. *See Robinson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994). As noted in Part I, *supra*, this Court is presently limited to the facts alleged in the complaint and the documents attached thereto. Because there is no indication from the complaint and attached documents what, if anything, Judge Lawrence initially ordered Janosek to do, and what, exactly, Janosek did in response, it cannot yet be determined whether Janosek's actions, or the manner in which he executed Judge Lawrence's orders, exceeded the scope of those orders. Janosek therefore cannot be granted absolute immunity.

B.     *Janosek's entitlement to qualified immunity cannot be determined at the Rule 12(b)(6) stage.*

As an alternative to absolute immunity, the Defendants argue that dismissal of Levine's claims against Janosek are warranted under the doctrine of qualified immunity. Because this defense similarly turns on facts not apparent from the face of Levine's complaint,

dismissal on the basis of qualified immunity is premature as well.

       1.       *Section 1983 and qualified immunity: legal standards*

Section 1983, pursuant to which Levine brings his claims, provides a vehicle for civil suits for damages against any person who, acting under color of state law, deprives another person of a right, privilege or immunity secured by the Constitution or the laws of the United States. *See* 42 U.S.C. § 1983. When a law enforcement officer is alleged to have violated a person's constitutional rights however, the doctrine of qualified immunity protects that officer from such suits for damages if his "conduct does not violate clearly established statutory or constitutional rights of which reasonable [officer] would have known." *Kerman v. City of New York*, 261 F.3d 229, 236 (2d Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Since Section 1983 "is not itself a source of substantive rights" and only provides "a method for vindicating federal rights elsewhere conferred," *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)). "[t]he first step in any [1983]claim is to identify the specific constitutional right allegedly infringed." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995) (citations omitted). "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right." *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997).

Fairly read, Levine's complaint asserts that Janosek violated Levine's civil rights through "wrongful, wilful and intentional acts" of (1) false arrest, and (2) the use of excessive

22

force or an otherwise unreasonable manner of effecting the arrest.[9]  In support of this claim, Levine's complaint alleges the following specific actions by Janosek: "The Court Officer assaulted Plaintiff Levine by pushing him out of the [courtroom] doorway, back into the hallway," subsequently "Janosek came out of the courtroom, assaulted Plaintiff Levine by grabbing his arms and putting handcuffs around his wrists," Levine was "pushed through the hallway" and "treated like a criminal," and that "Janosek had no probable cause to believe that a crime had been committed."

The next question is whether, when taken in the light most favorable to the plaintiff, the facts alleged show that the defendant officer's conduct violated the alleged constitutional right at all.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  This is a legal, not factual, inquiry.  *Genas v. State of N.Y. Dep't of Corr. Servs.*, 75 F.3d 825, 830 (2d Cir. 1996).  If, even assuming that all of the allegations in the complaint are true, the plaintiff has not established the defendant-officer's violation of any constitutional right, there is no need for further inquiry; but if the plaintiff has successfully alleged some violation of his constitutional rights, the court must then determine whether that right was "clearly established" at the time of its violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  A right was clearly established if, "in light of the specific context of the case," it would have been "clear to a

---

[9]     Levine also alleges that Janosek violated his rights through acts of "assault."  Assault is strictly a state law claim, which is not cognizable under Section 1983, and thus for which no qualified immunity analysis is needed.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995); *and Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985).  Accordingly, this opinion does not address, and this Court defers ruling on whether to exercise its supplemental jurisdiction over, any state-law assault claim.

reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02. This is a question of law. *Kerman v. City of New York*, 374 F.3d 93, 108-09 (2d Cir. 2004).

There is one final "dimension" to the qualified immunity inquiry. Even where an officer violates a clearly-established right, "[i]f the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. A defendant passes this "objective reasonableness" test, and is entitled to immunity, if "officers of reasonable competence could disagree" on the legality of his actions. *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). Thus, in evaluating a qualified immunity defense, "the inquiry is not whether plaintiff has alleged a violation of an abstract legal standard, but whether under the particular circumstances alleged, defendants could have reasonably believed that they did not violate plaintiff's constitutional rights." *Gittens v. LeFevre*, 891 F.2d 38, 42 (2d Cir.1989). While the objective reasonableness of a defendant's conduct may be resolved as a matter of law by the court where there is no dispute as to the material facts, it is generally a mixed question of law and fact to be resolved by a factfinder. *See Kerman v. City of New York*, 374 F.3d 93, 108-09 (2d Cir. 2004), *and Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995).

A qualified immunity defense may be presented, but "faces a formidable hurdle" in a Rule 12(b)(6) motion, and is usually not successful. *See McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004). As with any Rule 12(b)(6) dismissal motion, the court must accept all of the complaint's material allegations as true, and draw all reasonable inferences in favor of the plaintiff. *See Velez v. Levy*, 401 F.3d 75, 100 (2d Cir. 2005). Rule 12(b)(6) dismissal

on qualified immunity grounds is only permitted where the basis for qualified immunity is established by the face of the complaint itself, and it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *McKenna*, 386 F.3d at 435-36 (citing *Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir. 1983), and *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)). That is, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.

Section 1983 complaints alleging Fourth Amendment violations in particular should not be dismissed on qualified immunity grounds where there are "conflicting plausible interpretations" of the events surrounding the plaintiff's arrest. *Hyde v. Arresting Officer Caputo*, No. 98 Civ. 6722, 2001 WL 521699, at *2 (E.D.N.Y. May 11, 2001) (citing *Posr v. Court Officer*, 180 F.3d 409, 415 (2d Cir. 1999)).

2.      *Qualified immunity is premature on Levine's false arrest claim.*

While false or unlawful arrest is a state law cause of action, such a claim rests upon an allegation that the claimant was arrested without probable cause in violation of the Fourth Amendment. *See Devenpeck v. Alford*, 125 S.Ct. 588, 592 (2004). Such claims are thus commonly brought pursuant to Section 1983, although federal courts generally look to the law of the state in which the arrest occurred. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures," U.S. CONST. amend. IV. In order to be

reasonable (and thus lawful) under the Fourth Amendment, any "seizure"[10] of an individual,

including his warrantless arrest for a misdemeanor or "very minor criminal offense," generally

must be supported by probable cause. *See U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980), *and*

*Md. v. Pringle*, 540 U.S. 366, 370 (2003) (citations omitted). Infringements of the Fourth

Amendment and its probable cause requirement are the basis for Section 1983 "false arrest"

claims. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Conversely, at least in New

York, the existence of probable cause to arrest is a complete defense to a Section 1983 action

based on an allegation of false arrest. *Id*.

Probable cause under the Fourth Amendment exists "where the facts and

circumstances . . . are sufficient unto themselves to warrant a man of reasonable caution to

believe that an offense has been or is being committed." *Berger v. State of N.Y.*, 388 U.S. 41,

55 (1967). This standard is, as its plain language indicates, fact-based. Thus, where a court is

unable to determine from the pleadings that, as a matter of law, it was objectively reasonable

for a defendant-officer to find probable cause, dismissal of a false arrest claim against that

officer is improper. *See Bullard v. City of New York*, 240 F. Supp.2d 292, 301 (S.D.N.Y.

2003) (Koeltl, J.). As suggested earlier in this opinion, the details of what occurred when

Levine attempted to enter Judge Lawrence's courtroom are unclear at this point. It therefore

cannot currently be determined whether Janosek had probable cause to arrest Levine, and

---

[10] A "seizure" is defined as an incident in which, in view of the surrounding circumstance, "a reasonable person would have believed that he was not free to leave." *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

qualified immunity on Levine's false arrest claim is accordingly premature.

3. *Qualified immunity on Levine's excessive force claim is premature.*

Even assuming that Janosek had probable cause to arrest Levine, he would not automatically be immune from any and all of Levine's claims. The Supreme Court and Second Circuit have long and unequivocally stated that the reasonableness of an arrest or other seizure depends in part on how it is carried out. *See Tenn. v. Garner*, 471 U.S. 1, 8 (1985); *and Lauro v. Charles*, 219 F.3d 202, 209 (2d Cir. 2000) ("the Fourth Amendment's proscription of unreasonable searches and seizures not only prevents searches and seizures that would be unreasonable if conducted at all, but also ensures reasonableness in the manner and scope of searches and seizures that are carried out") (internal quotations and ellipses omitted). Even where a law enforcement officer has probable cause to seize or arrest a person, the failure to effectuate the seizure or arrest in an unreasonable fashion may be grounds for a Section 1983 claim. *See, e.g.*, *Thomas v. Roach*, 165 F.3d 137, 143-44 (2d Cir. 1999), *and Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir. 1994).

As in other Fourth Amendment contexts, the requisite inquiry in an unreasonable seizure claim is an objective one: whether an officer's actions were "objectively reasonable" in light of the totality of the facts and circumstances that confronted him, without regard to his underlying intent or motivation. *See Graham v. Connor*, 490 U.S. at 397, and *Tenn. v. Garner*, 471 U.S. at 8-9. This requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," *id.* at 396 (internal quotations omitted), and

an assessment of the degree to which the officer's actions furthered the legitimate law enforcement purposes behind those actions. *Lauro*, 219 F.3d at 211. In particular, a court should consider the severity of the underlying crime, whether the suspect poses a threat to the safety of the officer or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. *See Graham*, 490 U.S. at 396.

In the present case, the "totality of the facts and circumstances" is entirely unclear; in particular, it is unknown whether and to what extent Levine was disrupting the underlying proceedings, threatening the safety of Janosek or other individuals, or attempting to resist or evade arrest. It is thus impossible to know, at this early stage of the proceedings, whether it would have been clear to a reasonable officer in Janosek's situation that the manner of Levine's arrest violated the Fourth Amendment. Qualified immunity on Levine's excessive force claim is thus premature as well.

C.       *Janosek's other grounds for dismissal lack merit.*

In addition to absolute and qualified immunity, the Defendants argue that Levine's claims should be dismissed for a variety of other reasons,[11] which need only be addressed perfunctorily.

1.       *The Rooker-Feldman doctrine is inapplicable to Levine's claims.*

The Defendants argue that under the "Rooker-Feldman doctrine," this Court lacks

---

[11]       Although the Defendants' arguments are addressed to Levine's complaint as a whole, the previously discussed dismissal of Levine's declaratory cause of action and his claims against Judge Lawrence render the points discussed *infra* applicable only to Levine's claims against Janosek.

jurisdiction to hear Levine's claims, in particular his claims that the New York statutory scheme is unconstitutional. However, the Rooker-Feldman doctrine is inapplicable in the present case.

Under the Rooker-Feldman doctrine, lower federal courts lack subject matter jurisdiction over cases in which the exercise of jurisdiction may result in the reversal or modification of a state court judgment. *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998). Instead, "among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments." *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999). By contrast, however, where a Section 1983 suit "challenges a rule or statute relied upon by the state court on the grounds that the rule or statute is itself unconstitutional, then the federal court has the subject matter jurisdiction to hear the case." *Fariello v. Campbell*, 860 F. Supp. 54, 66 (E.D.N.Y. 1994) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486-88 (1983); and *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1144 (2d Cir. 1986) (*rev'd on other grounds*, 481 U.S. 1, 10 (1987)).

In this case, Levine is apparently not seeking to reverse or modify the underlying contempt judgment; he is only seeking damages for the Defendants' purportedly "[t]ortious, unconstitutional conduct," and a declaration that the New York criminal contempt scheme is unconstitutional. The Rooker-Feldman doctrine thus does not present a jurisdictional bar to this Court's consideration of Levine's claims.

2.    *Levine has adequately alleged an actual injury.*

The Defendants argue, somewhat incredibly, that Levine lacks standing to bring

the present lawsuit because he "does not specify any actual or potential injury, whether physical, emotional, or to [his] property for which he seeks help." Instead, argue the Defendants, Levine merely seeks "to have the Government act in accordance with [the] law."

It is true, as the Defendants suggest, that in order to meet the constitutional requirement of standing, a federal plaintiff must establish some "injury in fact," which must be "concrete and particularized," "actual or imminent," and "not conjectural or hypothetical." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). However, that does not mean that a plaintiff's injuries must be earth-shatteringly severe in order to bestow standing upon him. Even social shame can constitute an injury-in-fact. *See, e.g., A.L.A. v. West Valley City*, 26 F.3d 989, 990-91 (10th Cir. 1994) (plaintiff's embarrassment and depression following defendants' unlawful disclosure of erroneous but confidential information that he was HIV-positive were "more than sufficient to satisfy the 'injury in fact' requirement for standing"). A plaintiff whose Fourth Amendment rights were allegedly violated clearly has standing to seek appropriate monetary and declaratory relief. *See Shain v. Ellison*, 356 F.3d 211, 214-15 (2d Cir. 2004). And at the pleading stage, a plaintiff must merely allege facts sufficient to establish standing, *Lujan*, 504 U.S. at 561, and a court must accept "all facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the plaintiff." *Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 68 (2d Cir. 2000).

Levine's complaint clearly indicates that he was physically seized and arrested by Janosek, and then humiliatingly pushed through the courthouse lobby in handcuffs, in full view of the public. Levine's allegations amply meet the requirements of standing. If this

treatment was in fact unreasonable and unlawful, as Levine's complaint indicates and as must be assumed for purposes of the present motion, then he undeniably suffered a sufficient injury to have standing to bring the present suit.

3. *Collateral estoppel does not bar this action.*

The Defendants argue that Levine's claims must be dismissed on the basis of collateral estoppel, or "issue preclusion." The Defendants again correctly state a general principle of law — namely that "collateral estoppel principles . . . bar a § 1983 plaintiff from relitigating in federal court an issue which was *previously decided* in an action or proceeding brought in State court." [Emphasis added.] *See Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995). But as the words "previously decided" in their own quotation should have suggested to the Defendants, collateral estoppel only applies where the issue for which preclusion is sought "was actually and necessarily decided in a prior proceeding." *Id.* Contrary to the Defendants' suggestion, it is *not sufficient* that the party against whom the doctrine is asserted merely had a full and fair opportunity to litigate the issue in the first proceeding. *Id.* Nothing in Levine's submissions (or even the Defendants') remotely suggests that Levine's current constitutional arguments were raised before Judge Lawrence, or in any other state court. The fact that Levine (arguably) *could* have raised these arguments does not justify dismissal on collateral estoppel grounds.

4. *Levine's claims are not barred by the Eleventh Amendment.*

The Defendant argue that "where a state official is sued for damages in his official capacity, such suit is deemed an action against the state, thus entitling that state official

to claim immunity from suit under the Eleventh Amendment of the U.S. Constitution." There is one slight problem with this argument: the first paragraph of Levine's complaint notes that his claims are brought against Judge Lawrence and Janosek in their *individual*, as well as official, capacities.

The U.S. Supreme Court has unanimously held that the Eleventh Amendment does not bar Section 1983 actions against state officials sued in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). Section 1983 actions against state officials in their personal capacity alleging violations of federal constitutional rights are not considered actions against a state, because as a matter of law, acts performed by state officials that violate federal law cannot be authorized by the state. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) (citing *Ex parte Young*, 209 U.S. 123, 160 (1908)).

Since Levine's complaint clearly states that it is brought against Judge Lawrence and Janosek in their individual capacities, and clearly alleges that Janosek violated Levine's federal constitutional rights, the Eleventh Amendment is no bar to the present suit.

> 5. *Levine does not fail to state a cause of action against Janosek.*

The Defendants suggest that Levine has failed to allege sufficient facts to substantiate his claims, specifically "specific allegations of fact which indicate a deprivation of constitutional rights." The Defendants' argument, however, entirely omits any reference to the specific facts that Levine must allege in support of a Fourth Amendment-based claim for unlawful arrest or excessive force, and how Levine's complaint is deficient in this regard.

"The allegations necessary to state [a Fourth Amendment] claim, as in the case

of any other civil action in the federal courts, are not to be held insufficient unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Norris*, 300 F.2d 24, 31 (9th Cir. 1962) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). In the present case, Levine's complaint indicates that he was pushed out of a courtroom, handcuffed, pushed through the courthouse, arrested, and kept in handcuffs for roughly thirty minutes — but there is little clear indication as to why. Further, the information contained in the complaint and supporting papers indicates that Levine was treated rather roughly in spite of the fact that he is an elderly man, was almost certainly unarmed and alone, seemingly posed no threat to the safety of Janosek or anyone else, and did not actively resist or attempt to evade the arrest in question. When these points are taken together, it does not appear beyond doubt that Levine can prove no set of facts in support of his claims that he was arrested without probable cause and with excessive force. *Cf. Veterans Speakers Alliance v. Fowler*, No. 91 Civ. 4459, 1993 WL 69200, at *1-2 (N.D. Cal. March 2, 1993) (plaintiffs' allegations that they were arrested, handcuffed, and detained for over one hour after refusing to surrender protest signs at parade sufficiently alleged fourth amendment violation to survive Rule 12(b)(6) dismissal motion).

## CONCLUSION

For all of the reasons above, the Defendants' motion to dismiss the complaint is GRANTED IN PART, as to Levine's claims against Judge Lawrence and for a declaratory judgment, but DENIED IN PART as to Levine's claims against Janosek. The Clerk of Court

is directed to remove Judge Lawrence's name from the docket.

**SO ORDERED.**

Dated:        Central Islip, New York               /s/_____
                June 15, 2005                   Denis R. Hurley
                                          United States District Judge